**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

RONALD NOBLE,

       **Plaintiff,**

v.

LT. J. BURLEY, SGT. FIERO, C/O
MAYS, C/O SCHNELL, LT. CLARY,
C/O NOLAN GERLING,
C/O MUSGRAVE, C/O T. BARTH, and
NURSE DEENA SEED,

       **Defendants.**

Case No. 25-cv-1757-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ronald Noble, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center. In the Complaint, Noble alleges that Defendants used excessive force and denied him medical care in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

### The Complaint

On December 26, 2025, Noble arrived at Lawrence from a court writ (Doc. 1, p. 31). Noble alleges that as with all of the other individuals on the transfer bus, he was handcuffed and seated until he arrived at Lawrence. Officer Schnell was the officer who seated the inmates and cuffed them to a long chain (*Id.*). Correctional Officer ("C/O") Mays was also on the bus, and Lieutenant ("Lt.") Burley was the driver (*Id.*).

Noble was transferring to segregation and, as a result, was the first to exit the bus (Doc. 1, p. 32). He was carrying a brown bagged lunch. Lt. Clary informed Noble that he could not have the bagged lunch and directed him to throw it away or there would be problems (*Id.*). Noble agreed to throw the bag away but asked if he was able to keep his court writ bag which contained his hygiene items, shower shoes, and legal mail (*Id.*). Lt. Clary stated that he did not care about his court writ bag and again told Noble to throw his bagged lunch away (*Id.*).

Clary then grabbed the lunch bag out of Noble's hands, grabbed Noble's arm, and twisted it (Doc. 1, p. 32). Lt. Clary, Tactical Officer Nolan Gerling, Tactical Officer Musgrave, and Lt. Burley wrestled Noble to the ground even though Noble was handcuffed and did not pose a threat to anyone (*Id.*). Noble noted that he was handcuffed and was not causing any problems, but the officers said they were going to teach him to listen to officers. An officer placed his knee on Noble's neck, and the officers punched him in the ribs, stuck a finger in his right eye, and sprayed mace in his eyes and ears (*Id.* at p. 33). Sergeant ("Sgt.") Fiero approached the group and dove on top of Noble, holding his head and neck down (*Id.*). Despite Noble's pleas that he could not breathe, Officer

Musgrave said he did not care and tried to pull Noble's hair out while the other officers choked him (*Id.* at p. 33). He was then placed in a restraint chair despite still being handcuffed (*Id.*).

Noble was placed in the showers where Internal Affairs Officer B. Costantino took pictures of his injuries (Doc. 1, p. 34). Noble suffered bruising to his face and eyes. His right eye was red and puffy from the mace, and he suffered a cut in the corner of his right eye (*Id.*). He also suffered cuts on his elbows, wrists, and hands (*Id.*). Noble asked Sgt. Fiero and Lt. Clary for medical attention but they declined his request (*Id.*). Over two hours later, Nurse Deena Seed saw Noble. He informed her of his many injuries (*Id.*). She documented the injuries, but when he requested something for the pain and for help cleaning up his injuries, she stated that she would return later to tend to his injuries (*Id.*). But Seed never came back to treat Noble.

Seed also conducted a mental health assessment for crisis care (Doc. 1, p. 34). Noble noted that he was not suicidal, he just needed medical treatment (*Id.*). He later learned from Sgt. Fiero and Lt. Clary that Nurse Seed ordered Noble placed on crisis watch (*Id.* at p. 35). Fiero, Clary, Gerling, and Barth transported Noble to crisis watch (*Id.*). Noble alleges that Seed was not qualified to order his placement on crisis watch because she was not a mental health provider (*Id.* at p. 35). He asked several officials for medical care, including Lt. Deimal, Sgt. Severly, and Nurse Joy (*Id.*). He showed them his injuries, including the mace and blood that was coming out of his ear (*Id.*). They merely noted that the healthcare unit was aware of his injuries (*Id.*).

The next morning, Noble spoke with mental health provider E. Marsh and the mental health doctor, L. Hoke (Doc. 1, p. 36). He informed them that he was not suicidal. They agreed and removed him from crisis watch (*Id.*). He was transported to the healthcare department where he asked Nurse Brown to clean his injuries and the lingering mace. She refused because it had been over a day since his injuries and she said he did not need treatment (*Id.*). He then spoke to Internal Affairs Officer Rich and informed Rich that he needed the camera footage, pictures, and reports from Costantino's investigation (*Id.*).

On January 8, 2025, Noble went before Lt. Brain[1] Tolliver and C/O Carmen Milian on a disciplinary ticket related to the incident (Doc. 1, p. 37). Noble was allowed to present a written statement. He also argued that he was charged with an assault resulting in injury to a staff remember but there were no incident or injury reports to support the ticket (*Id.*). There were no documented injuries from the officers, none of the guards were seen by medical professionals for injuries or decontamination from mace exposure, and he only received one ticket for assault despite supposedly fighting several officers (*Id.*). Noble notes that the hearing officers failed to document his entire written statement in the final summary (*Id.*).

---

[1] Noble repeatedly refers to this individual as "Brain." The Court suspects his name is "Brian" but at this time will use the spelling offered by Noble.

## Preliminary Dismissals

Noble identifies several individuals throughout his pleading that he fails to identify as defendants in the case caption. He notes that he informed numerous officers, including Lt. Deimal, Sgt. Severly, Nurse Brown, and Nurse Joy, about his need for medical care and they refused his requests for care. He mentions two internal affairs officers and a disciplinary hearing officer who allegedly failed to properly document the incident. He alleges that Barton failed to intervene in the use of force (Doc. 1, p. 45). None of these individuals are identified as defendants in the case caption. In order to be a party in the case, a plaintiff must identify them in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Because these individuals are not identified as defendants in the case caption, any potential claim against them is **DISMISSED without prejudice**.

Noble also attempts to raise a First Amendment retaliation claim against Deena Seed. He argues that was engaged in protected speech when he asked for medical care and she retaliated against him by placing him on crisis watch (Doc. 1, p. 41). To state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568,

5

573 (7th Cir. 2000) (citation omitted). Noble alleges that Seed retaliated against him because he requested medical care, but he fails to allege that his request was a motivating factor. He merely alleges that he asked for medical care and she failed to return and instead placed him on crisis watch. Noble fails to adequately allege a retaliation claim.

Noble also states that he is bringing an equal protection claim and that the defendants who used force against him were motivated by "discriminatory litigation bias" (Doc. 1, p. 38). Noble fails to further allege how he believes he faced discrimination. He merely states this potential claim in conclusory fashion. Thus, any claim for an equal protection violation is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** **Eighth Amendment excessive force claim against A. Musgrave, Nolan Gerling, Lt. Clary, J. Burley, and Sgt. Fiero for their use of force against Noble on December 26, 2024.**
>
> **Count 2:** **Eighth Amendment failure to intervene claim against Schnell, Barth, and Mays for failing to intervene in the use of force.**
>
> **Count 3:** **Illinois State Law assault and battery claim against A. Musgrave, Nolan Gerling, Lt. Clary, J. Burley, and Sgt. Fiero for their use of force against Noble on December 26, 2024.**
>
> **Count 4:** **Eighth Amendment deliberate indifference to medical needs claim against Deena Seed for refusing to treat Noble's injuries after the incident and improperly placing him on suicide watch.**
>
> **Count 5:** **Eighth Amendment deliberate indifference to medical needs claim against Sgt. Fiero and Lt. Clary for their failure to obtain medical care for Noble after the use of force.**

6

**Count 6:**    **Fourteenth Amendment due process claim against Lt. Brain Tolliver for finding Noble guilty of a staff assault despite the lack of evidence of a staff assault.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Counts 1 and 3**

Noble alleges that Defendants beat, choked, and sprayed mace into his face. He alleges that this use of force was taken despite Noble being handcuffed and unable to move, suggesting that the force was used "maliciously and sadistically" rather than in "a good-faith effort to maintain or restore discipline." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). The same allegations also adequately state an assault and battery claim under Illinois state law. *Shea v. Winnebago County Sheriff's Department*, No. 17-3078, 746 F. App'x 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). Because the allegations derive from the same allegations as the federal claim, Count 3 will also proceed against Defendants A. Musgrave, Nolan Gerling, Lt. Clary, J. Burley, and Sgt. Fiero. *See* 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 2**

Noble also alleges that several officers failed to intervene in the use of force. Although he alleges that Schnell and Mays failed to stop the other officers, Noble fails to offer any allegations suggesting that Schnell and Mays had the ability to intervene. An official can be liable for failing to intervene in an assault if they "have a realistic opportunity to step forward and prevent" another official from using "excessive force but fail to do so." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Noble merely alleges that Schnell and Mays were correctional officers on the transfer bus and that Schnell initially cuffed Noble prior to his transport. But nothing in his statement of facts indicates where either officer was during the use of force, and there are no allegations suggesting that they had a realistic opportunity to intervene in the assault. It is not clear that either officer was even present when the incident occurred.

Noble also refers to an Officer Barth, although at times he appears to reference this officer as Barton (Doc. 1, pp. 16, 39). It is not entirely clear that these two individuals are the same officer. He notes that Barth transported him to crisis watch, but there are no allegations to suggest that he was present during the use of force or had an opportunity to intervene (*Id.* at p. 35). Accordingly, Count 2 is **DISMISSED without prejudice.**

**Count 4**

Noble states a claim against Seed for her failure to provide him with medical care and for his placement on suicide watch. Noble alleges that he requested medical care and although Seed initially indicated that she would return to provide him with that care, she

8

never returned to his cell. Noble also alleges that Seed placed him on crisis watch despite no evidence that he posed a risk to himself. Thus, Count 4 shall proceed against Seed.

**Count 5**

Noble also adequately alleges a deliberate indifference claim against Fiero and Clary. Noble alleges that he requested medical attention from the officers after meeting with internal affairs and they specifically stated that they would not obtain medical care for him. Thus, Count 5 shall proceed against Fiero and Clary.

**Count 6**

In order to state a due process claim, an inmate must allege "(1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In situations where an inmate complains about discipline in which he received segregation constituting an atypical and significant hardship (but not the loss of good-time credit), the disciplinary proceedings are subject to an informal due process inquiry. *Ealy*, 109 F.4th at 965 (citing *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, and (2) an opportunity to present his views in either a written statement or hearing. *Ealy*, 109 F.4th at 966.

The Court first notes that Noble failed to identify Brain Tolliver as a defendant in the case caption and the section set aside for identifying defendants (Doc. 1, pp. 1-4). He is, however, identified as a defendant under a section Noble added to his pleading entitled "parties" (*Id.* at pp. 5-6). Even assuming that Noble properly identified Tolliver as a defendant, he fails to state a viable due process claim. Noble alleges that he received a year in segregation. Because he received segregation and lost no good time credit, he is only entitled to informal due process. There are no allegations to suggest that he was denied either of the requirements of informal due process. He acknowledged receiving notice of the reasons for the guilty finding and was allowed to present a written statement at the hearing. Although Noble complains that Tolliver failed to cite Noble's entire written statement, there is no requirement that his entire statement be documented in the statement of reasons for the disciplinary findings. Thus, his due process claim is **DENIED**.

### Motion for Counsel

As to his motion for counsel (Doc. 2), Noble states that he only has a grade school education and he does not understand legal proceedings. But his filings have been easy to understand. And given the early stages of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the

plaintiff's need for assistance of counsel ... cannot be gauged.").[3] There is nothing currently pending that would require counsel. Once Defendants have filed an Answer, the Court will enter a scheduling order explaining the next steps in the litigation process. If Noble continues to experience difficulties in litigating his case at that time, he may resubmit his request for counsel. At this time, counsel is not needed, and his motion is **DENIED**.

## Disposition

For the reasons stated above, Counts 1 and 3 shall proceed against A. Musgrave, Nolan Gerling, Lt. Clary, J. Burley, and Sgt. Fiero. Count 4 shall proceed against Deena Seed. Count 5 shall proceed against Sgt. Fiero and Lt. Clary. All other defendants and claims are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for A. Musgrave, Nolan Gerling, Lt. Clary, J. Burley, Sgt. Fiero, and Nurse Deena Seed: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Noble. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Noble, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Noble's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Noble, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Noble is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED:  June 16, 2026**

                                        **NANCY J. ROSENSTENGEL**
                                        **United States District Judge**

### Notice to Plaintiff

       The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**

13